## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 14-CIV-62243-BLOOM/Valle

DEBRA BARNES,

      Plaintiff,

v.

FRAMELESS SHOWER DOORS &
ENCLOSURES, INC., d/b/a The Original
Frameless Shower Doors, and
JOHN SERINO,

      Defendants.

_____/

### ORDER ON DEFENDANTS' MOTION FOR
### SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO STRIKE

This matter is before the Court upon Defendants, Frameless Shower Doors & Enclosures, Inc. and John Serino's Motion for Summary Judgment, ECF No. [36] ("Motion").  The Court has reviewed the Motion, all supporting and opposing filings thereto, the record in this case, and is otherwise fully advised.  For the reasons that follow, the Motion is denied.

### I. BACKGROUND

Plaintiff Debra Barnes ("Barnes") initiated these proceedings pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") seeking unpaid overtime compensation in the amount of $758.70, plus an equal amount in liquidated damages.  *See* Complaint, ECF No. [1] at 1; Amended Statement of Claim, ECF No. [16-1] at 1.  In or around July 2014, Barnes interviewed with Defendant Frameless Shower Doors & Enclosures, Inc. ("Frameless") for a position in Frameless' accounting department.  *See* Def. SOF, ECF No. [36] at ¶ 3; Pl. SOF, ECF No. [51] at ¶ 3.  At the time of her application, Barnes held a bachelor's degree in business

1

administration and accounting, but did not maintain any professional licenses.  *See* Barnes Depo. Excerpts, ECF No. [36-1] at 8:20-9:3.  Prior to working at Frameless, Barnes had worked as a Senior Accountant and/or Controller for various entities in the Palm Beach County area.  *See* Resume, ECF No. [36-5] at 1-2; Def. SOF, ECF No. [36] at ¶ 8; Pl. SOF, ECF No. [51] at ¶ 8. Shortly after interviewing, Barnes was hired and she commenced her employment with Frameless on approximately July 21, 2014.  *See* Pl. SOF, ECF No. [51] at ¶ 5.  During her tenure with Frameless, Barnes was not treated as an hourly employee and was, instead, compensated in an annualized amount between $50,000.00 and $52,000.00.  Def. SOF, ECF No. [36] at ¶ 9; Pl. SOF, ECF No. [51] at ¶ 9.  Despite this fact, Defendants contend that Barnes was responsible for submitting her hours and otherwise failed to notify Defendants that she worked in excess of forty hours during any work week.  *See* Def. SOF, ECF No. [36] at ¶¶ 14-15.  However, Barnes contends that she raised the issue on several occasions to Frameless' Vice President of Operations, Michael High ("High").  *See* Barnes Depo. Excerpts, ECF No. [47-1] at 78:5-79:25.

Although Barnes held the title of "Senior Accountant," the parties dispute the characterization of Barnes' job duties at Frameless.  According to Barnes, it was her understanding that she was being hired for simple data entry.  Barnes Depo. Excerpts, ECF No. [36-1] at 39:18-40:1, 41:7-16.  On the other hand, Frameless contends that Barnes was responsible for not only data entry, but also handling tax and payroll information, assisting with the preparation of monthly management reports, reconciling bank statements, paying vendors, and generating and cleaning up financial reports.  Def. SOF, ECF No. [36] at ¶ 11.  While Barnes repeatedly debates the fact that she performed the aforementioned functions, she does note a certain level of involvement, but states that any association with such activities was limited to data entry.  *See, e.g.,* Barnes Depo. Excerpts, ECF No. [36-1] at 55:19-21 (entered data regarding

2

monthly management reports), 60:10-61:1 (entered data regarding payroll).  Barnes expressed

that her function was more of a bookkeeper and assistant:

> **Q:** So you sit down, you turn on your computer and you start entering data, what else are you doing throughout the day?
>
> **A:** Paying vendors, collecting the mail, checking to see who needed the supplies that had to be ordered, depending on what day of the week it was preparing the timecards for payroll.
>
> **Q:** What percentage of your day dealt with paying vendors?
>
> **A:** Majority of [my] day.

*Id.* at 68:16-25.  Nevertheless, Frameless contends that Barnes operated at a more senior level,

even possessing the authority and discretion to hire employees, an authority she was able to

exercise in September 2014 when she hired Jessica Levi ("Levi").  *See* Def. SOF at ¶ 13; Barnes'

Affidavit, ECF No. [52-2] at ¶ 13.  Again, Barnes disagrees with this portrayal of her influence,

emphasizing that she was specifically instructed by Frameless' Vice President of Operations,

High, to hire Levi.  *See* Barnes' Affidavit, ECF No. [52-2] at ¶ 13.  The only undisputed aspect

of Barnes' employment appears to be the fact that Barnes was the sole individual within

Frameless' accounting department that communicated with Frameless' outside Certified Public

Accountant ("CPA"), Jerrold Hirsch.  Def. SOF, ECF No. [36] at ¶ 12; Pl. SOF, ECF No. [51] at

¶ 12.

       Barnes' term of employment was brief, and on September 29, 2014, Barnes left

Frameless.  Pl. SOF, ECF No. [51] at ¶ 5.  The next day, Barnes filed her Complaint in this

Court.  *See* Complaint, ECF No. [1].

## II. LEGAL STANDARD

       A party may obtain summary judgment "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The parties may support their positions by citation to the record, including inter alia, depositions, documents, affidavits, or declarations. Fed. R. Civ. P. 56(c). An issue is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). A fact is material if it "might affect the outcome of the suit under the governing law." *Id*. (quoting *Anderson*, 477 U.S. at 247-48). The Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in the party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. Further, the Court does not weigh conflicting evidence. *See Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007) (*quoting Carlin Comm'n, Inc. v. S. Bell Tel. & Tel. Co.*, 802 F.2d 1352, 1356 (11th Cir. 1986)).

The moving party shoulders the initial burden of showing the absence of a genuine issue of material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). Once this burden is satisfied, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., L.L.C.*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Instead, "the non-moving party 'must make a sufficient showing on each essential element of the case for which he has the burden of proof.'" *Id*. (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designating specific facts to suggest that a reasonable jury could find in

4

the non-moving party's favor. *Shiver*, 549 F.3d at 1343. Even "where the parties agree on the basic facts, but disagree about the factual inferences that should be drawn from those facts," summary judgment may be inappropriate. *Warrior Tombigbee Transp. Co., Inc. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983).

### III. DISCUSSION

Defendants assert that they are entitled to summary judgment as a matter of law for two distinct reasons.  First, Defendants' contend that Barnes has waived her right to overtime compensation because she failed to properly record her hours and never reported the fact that she worked overtime to her superiors.  *See* Motion, ECF No. [36] at 6-7.  Second, Defendants claim that Barnes is exempt from the FLSA under either the administrative or professional exemption pursuant to 29 U.S.C. § 213(a)(1).[1]  *Id.* at 8-13.  Because genuine issues of material fact exist, summary judgment is inappropriate.

### A.      Estoppel/Waiver

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  The simple fact that an employee worked overtime on some occasions does not automatically entitle that employee to relief: "a[n] FLSA plaintiff must demonstrate that (1) he or she worked overtime without

---

[1] On April 6, 2015, Plaintiff moved to strike Defendants' professional exemption affirmative defense, asserting that it was raised, for the first time, in Defendants' Motion for Summary Judgment.  *See* Motion to Strike, ECF No. [53]. Indeed, no prior filing in this matter had explicitly asserted the professional exemption.  However, the Court found that given the procedural posture of this matter, a compromise was warranted: the Court granted Defendants the opportunity to amend their affirmative defenses but noted that it would not consider such arguments with respect to the issue of summary judgment.  *See* Order, ECF No. [62].  *Id.* Accordingly, the Court's analysis herein does not address the professional exemption.

compensation and (2) the [employee's supervisors] knew or should have known of the overtime work." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314-15 (11th Cir. 2007) (citing *Reich v. Dep't of Conservation & Natural Res., State of Ala.*, 28 F.3d 1076, 1081-82 (11th Cir. 1994)).  "The reason an employee continues to work beyond his shift is immaterial; if the employer knows or has reason to believe that the employee continues to work, the additional hours must be counted."  *Reich*, 28 F.3d at 1081-82 (citing 29 C.F.R. § 785.11).  Moreover, when "reviewing the extent of an employer's awareness, a court need only inquire whether the circumstances were such that the employer either had knowledge of overtime hours being worked or else had the opportunity through reasonable diligence to acquire knowledge."  *Id.* at 1082 (internal quotation, citation, and formatting removed).

In conformity with this rule, courts in this district have held that where an employer is utterly unaware of the employee's overtime work, the employer is not liable for the violation. *See Debose v. Broward Health*, No. 08-61411-CIV-MOORE, 2009 WL 4884535, at *12 (S.D. Fla. Dec. 17, 2009) (no FLSA violation where "supervisors had no way of knowing" of the violation); *see also McGlothan v. Walmart Stores, Inc.*, No. 6:06-CV-94-ORL-28JGG, 2006 WL 1679592, at *2 (M.D. Fla. June 14, 2006) ("Binding precedent in this Circuit establishes that the affirmative defense of estoppel is available in response to an FLSA claim where the employee affirmatively misleads the employer regarding the number of hours worked and the employer had no knowledge of the employee's actual hours.") (citing *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324, 1327 (5th Cir. 1972)); *Gaylord v. Miami-Dade Cnty.*, 78 F. Supp. 2d 1320, 1325 (S.D. Fla. 1999) ("An employer does not have knowledge of uncompensated overtime when an employee submits time sheets showing such overtime did not occur.") (citing *Brumbelow*, 462 F.2d at 1327); *but see Mahshie v. Infinity Ins. Co.*, No. 12-20148-CIV, 2012 WL 5818150, at *6

(S.D. Fla. Nov. 15, 2012) (employer not entitled to summary judgment where employee "engaged in off-the-clock work that he was not compensated for and that his supervisors knew or should have known about the unrecorded time").

Here, Barnes' testimony clearly establishes that she attempted to inform her superiors that she was not receiving overtime compensation:

> **Q:**   Did you ever speak to Mike High or John Serino or anyone else at Frameless during your employment in which you said I should be getting overtime?
>
> **A:**   I brought it up that there are a few people that should be getting overtime.
>
> **Q:**   You brought this up to who?
>
> **A:**   To Mike.
>
> **Q:**   When?
>
> **A:**   Numerous times.
>
> **Q:**   Including yourself?
>
> **A:**   Well, we're all working the hours, yes.
>
> **Q:**   Let's break that down.· When was the first time you approached Mike High and said, Mike, I should be getting overtime compensation?
>
> **A:**   I don't know exactly when.
>
> **Q:**   How many occasions did you do that?
>
> **A:**   There was a couple of times.

Barnes Depo. Excerpts, ECF No. [47-1] at 78:8-24.   While Defendants may dispute Barnes' recollection, submitting several affidavits to the contrary, the Court must view the record in the light most favorable to Barnes.   Additionally, although Barnes was responsible for inputting the hours of other employees, and, allegedly, her own, the records of Barnes' work hours reveal

7

nothing—Barnes' hours are simply recorded as a zero.  *See* Payroll Summary, ECF No. [52-4] at 1.  Accordingly, there remain genuine issues of fact which preclude the grant of summary judgment on this ground.  *See Mahshie*, 2012 WL 5818150, at *6.

### B.     Administrative Exemption

Employees who are "employed in a bona fide executive, administrative, or professional capacity" are exempt from the FLSA's overtime provisions.  *See* 29 U.S.C. § 213(a)(1). Exemptions under the FLSA are to be construed narrowly and the employer bears the burden of demonstrating that it is entitled to the exemption.  *Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 965 (11th Cir. 1997) (citing *Nicholson v. World Business Network, Inc.*, 105 F.3d 1361, 1364 (11th Cir. 1997), *cert. denied*,  522 U.S. 949 (1997); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 594 (11th Cir. 1995)); *Abel v. S. Shuttle Servs., Inc.*, 631 F.3d 1210, 1212 (11th Cir. 2011) ("We construe FLSA exemptions narrowly against the employer.").   By regulatory definition, "[a]n employee employed in a bona fide administrative capacity is one: (1) who is paid a salary of at least $455 per week; (2) '[w]hose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers;' and (3) '[w]hose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance.'"  *Adams v. BSI Mgmt. Sys. Am., Inc.*, 523 F. App'x 658, 660 (11th Cir. 2013) (quoting 29 C.F.R. § 541.200(a) (setting out three elements necessary to be deemed an "employee employed in a bona fide administrative capacity")).  "A job title alone is insufficient to establish the exempt status of an employee.  The exempt or nonexempt status of any particular employee must be determined on the basis of whether the employee's salary and duties meet the requirements of the regulations in this part."  29 C.F.R. § 541.2

In this action, it is undisputed that Barnes satisfies the first element as she was paid a salary between $50,000.00 and $52,000.00, which easily satisfies the minimum salary requirement under 29 C.F.R. § 541.200(a)(1).  Accordingly, the only remaining inquiries are whether Barnes' primary job duties were related to the management or general business operations of Frameless and whether those duties included the exercise of discretion and independent judgment.  *Id.* at § 541.200(a)(2)-(3).

In order to be performing work "directly related to the management or general business operations" "an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment."  29 C.F.R. § 541.201(a). The Code of Federal Regulations clarifies further, providing specific examples of such work:

> Work directly related to management or general business operations includes, but is not limited to, work in functional areas such as tax; finance; accounting; budgeting; auditing; insurance; quality control; purchasing; procurement; advertising; marketing; research; safety and health; personnel management; human resources; employee benefits; labor relations; public relations, government relations; computer network, internet and database administration; legal and regulatory compliance; and similar activities. Some of these activities may be performed by employees who also would qualify for another exemption.
>
> *              *              *
>
> [F]or example, employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt.

*Id.* at § 541.201(b)-(c).  "The term 'primary duty' means the principal, main, major or most important duty that the employee performs.  Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole."  29 C.F.R. § 541.700(a).

Defendants aver that Barnes' primary duty, to wit, accounting, was directly related to the management or general business operations of Frameless.  Notably, Barnes does not dispute this characterization, accepting the fact that her primary duties involved the performance of office or non-manual work related to Frameless' general business operations.  *See* Response, ECF No. [52] at 10.  The Court agrees and progresses to the third and final prong of the administrative exemption, that is, whether Barnes' primary duties included "the exercise of discretion and independent judgment with respect to matters of significance."  29 C.F.R. § 541.200(a).

"In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered."  29 C.F.R. § 541.202(a).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  *Id.*  This determination is made "in light of all the facts involved in the particular employment situation in which the question arises."  *Id.* at § 541.202(b).  Factors to be considered include:

> whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices; whether the employee carries out major assignments in conducting the operations of the business; whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business; whether the employee has authority to commit the employer in matters that have significant financial impact; whether the employee has authority to waive or deviate from established policies and procedures without prior approval; whether the employee has authority to negotiate and bind the company on significant matters; whether the employee provides consultation or expert advice to management; whether the employee is involved in planning long- or short-term business objectives; whether the employee investigates and resolves matters of significance on behalf of management; and whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.*  "The exercise of discretion and independent judgment must be more than the use of skill in applying well-established techniques, procedures or specific standards" and "does not include

clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." *Id.* at § 541.202(e).

Defendants alert the Court to one substantive event where Barnes allegedly exercised discretion and independent judgment: the hiring of Jessica Levi. *See* Motion, ECF No. [36] at 10. However, Barnes contends that she was specifically instructed to make that decision by her superior, High. *See* Barnes' Affidavit, ECF No. [52-2] at ¶ 13. This single contested occurrence cannot support a finding that Barnes regularly utilized independent judgment in performing work for Frameless.[2] Even when considering the other elements argued by Defendants, Barnes job functions are not so distinctly within the realm of discretionary judgment so as to place her in

---

[2] Defendants contend that Barnes' Affidavit repeatedly contradicts her prior deposition testimony. Notably, according to Defendants, where Barnes' Affidavit states that she did not make the decision to hire Levi, her deposition testimony reveals otherwise:

> Q:   What about Jessica Levy, weren't you her supervisor?
> A:   She was just hired, she was not even full time yet.
> Q:   Hired by you, right?
> A:   I interviewed her.
> Q:   And you offered her a job?
> A:   I did.
> Q:   At fourteen dollars an hour?
> A:   I did.

Barnes Depo. Excerpts, ECF No. [36-1] at 50:1-10. . "A party opposing summary judgment may not substitute an affidavit alleging helpful facts in place of earlier deposition testimony in hopes of avoiding summary judgment." *Moore v. Tractor Supply Co.*, 352 F. Supp. 2d 1268, 1275-76 (S.D. Fla. 2004) (striking plaintiff's affidavit "insofar as it is inconsistent with [p]laintiff's deposition testimony"); *Van T. Junkins & Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). In such circumstances, the Court "*may disregard* [the] affidavit." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1240 n.7 (11th Cir. 2003) (emphasis added). Thus, where an affidavit unambiguously and unquestionably conflicts with prior deposition testimony, those portions of the affidavit shall be disregarded. *See also Aira v. Best Nat. Vending, Inc.*, 2012 WL 4935086 at *9-10 (S.D. Fla. 2012) (deciding that "to the extent [the] subsequent affidavit attempts to create a fact question . . . it is a sham and will not be considered," but never striking it from the record); *Pennant v. Convergys Corp.*, 368 F. Supp. 2d 1307, 1312 (S.D. Fla. 2005) (disregarding subsequent affidavit as a sham). Here, the Court finds that Barnes' testimony is not so openly contradictory as to warrant a disregard for Barnes' clarification in her Affidavit.

exempt status.   On the one hand, Defendants assert that Barnes corrected accounts, input accounts payable, assisted with the preparation of monthly reports and schedules, reconciled bank statements, and otherwise utilized general accounting principles in the performance of her duties.   *See* Motion, ECF No. [36] at 10-11.   On the other, Barnes has repeatedly testified that her duties at Frameless were limited to data entry, regardless of whether it was with respect to accounts payable, employee time cards, invoices, etc.   *See* Barnes Depo. Excerpts, ECF No. [36-1] at 39:18-40:1, 41:7-16, 55:19-21, 60:10-61:1, 68:16-25.   Simply put, there is a plethora of disputed fact surrounding what Barnes was responsible for during her brief term with Frameless. Although Defendant would have the Court believe otherwise, Barnes job duties, according to her, did not unequivocally include any of the factors set forth in 29 C.F.R. § 541.202(b).   The mere fact that Barnes was apparently responsible for generating balance sheets and profit and loss statement for Frameless, as well as communicating with Frameless' outside CPA, see Affidavit of Jerrold Hirsch, ECF No. [36-3] at 3-33, does not indicate that Barnes regularly employed discretion and independent judgment to a degree where it can be said that she "compar[ed] and [] evaluat[ed] [] possible courses of conduct, and act[ed] or ma[de] a decision after the various possibilities have been considered."   29 C.F.R. § 541.202(a); *see Palacios v. Boehringer Ingelheim Pharm., Inc.*, 814 F. Supp. 2d 1357, 1365-66 (S.D. Fla. 2011) (sales representative not subject to administrative exemption where there was no evidence that plaintiff had "authority to formulate, affect, interpret, or implement [defendant's] management or operating policies, or that she was involved in planning [defendant's] long-term or short-term business objectives, or that she carried out major assignments in conducting the operation of [defendant's] business, or that she had any authority to commit [defendant] in matters that have significant financial impact"); *see also Alvarez v. Key Transp. Serv. Corp.*, 541 F. Supp. 2d

1308, 1313-14 (S.D. Fla. 2008) (noting that "matters of significance" include responsibilities dealing with matters of broad scope and significant detail that have a profound effect on an employer's business," not simply trivial discretionary matters); *cf. Bagwell v. Florida Broadband, LLC*, 385 F. Supp. 2d 1316, 1325 (S.D. Fla. 2005) (administrative exemption applicable where plaintiff "recommended decisions that directly affected [defendant's] operations and financial future").   When viewing the record in the appropriate light and accounting for all disputed issues of fact, Defendants have not carried their burden in demonstrating that that Barnes was subject to the administrative exemption, and, as such, judgment that Barnes was exempt from receiving overtime under the FLSA administrative exemption is inappropriate at this juncture.  *See Evans*, 131 F.3d at 965 ("[T]he employer has the burden of showing that it is entitled to the exemption.").

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that Defendants, Frameless Shower Doors & Enclosures, Inc. and John Serino's Motion for Summary Judgment, **ECF No. [36]**, is **DENIED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 6th day of May, 2015.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:
Counsel of Record